UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD L. SCHIEWEK,

    Plaintiff,

    v.

JO ANNE B. BARNHART,

    Defendant.

Civil No. 05-6080-HA

OPINION AND ORDER

KATHRYN TASSINARI
Cram, Harder, Wells & Baron
474 Willamette, Suite 200
Eugene, Oregon   97401
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon   97204-2904

LEISA A. WOLF
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington 98104-7075
      Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff Edward Schiewek seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the following reasons, the Commissioner's decision is affirmed.

## **BACKGROUND**

Schiewek filed for DIB on May 27, 1998. Tr. 147.[1] He initially alleged disability due to stomach pain, hernias, and a right knee impairment. Tr. 160. Schiewek contends he has been unable to work due to these impairments since April 30, 1998. Tr. 160.

Schiewek's application was denied initially. Tr. 122-24. A hearing was held before an Administrative Law Judge (ALJ) on February 4, 2000. Tr. 41-46. At this hearing Schiewek made additional allegations of mental impairments due to depression. Tr. 45. The ALJ terminated this hearing without eliciting vocational testimony or making findings, and ordered that Disability Determination Services (DDS)[2] consider these additional allegation. Tr. 45-46.

---

[1] Citations "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 25, 2005 [11].

[2] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

2 - OPINION AND ORDER

After considering medical evidence regarding Schiewek's depression, DDS found Schiewek not disabled. Tr. 121.

A second ALJ hearing was held on December 4, 2000, including new evidence regarding Schiewek's alleged depression. Tr. 47-106. The ALJ issued a decision unfavorable to Schiewek on February 13, 2001. Tr. 15-23. Schiewek's request for review before the appeals council was denied, and he filed a timely petition in this court. Tr. 7-8.

On May 9, 2002, this court issue an Order finding that the ALJ erred in stating Schiewek could return to past work requiring lifting, stooping, crouching, pushing, and pulling. Tr. 482-93. Accordingly, the case was remanded for further proceedings. Tr. 492. This court directed the ALJ to:

> [C]onsider the effect of plaintiff's problems with intellectual functioning, memory, and concentration, persistence and pace on his ability to perform his past relevant work of security guard/equipment watchman. If it is concluded that plaintiff cannot perform this past relevant work, then the Commissioner must address the next sequential item [i.e. step five].

Tr. 493.

The Appeals Council subsequently reiterated these instructions to the ALJ. Tr. 495-97.

A third hearing was held before the same ALJ on August 17, 2004. Tr. 555-87. This hearing resulted in a second unfavorable decision by the ALJ which Schiewek presently appeals. Tr. 462-73.

## **MEDICAL BACKGROUND**

This court adopts its previous discussion of the claimant's medical background and impairments. Tr. 483-88. Judge Redden's Remand Order recited relevant medical evidence, establishing Schiewek's history of abdominal surgery, hernias, gastric reflux disease, pulmonary

disease, right knee surgery, right shoulder strain, left ear hearing loss, and left eye glaucoma with resulting left eye blindness. Tr. 483-86. Psychological evidence, discussed in detail below, included mild Major Depressive Disorder and intellectual functioning in the "lower range of normal." Tr. 486.

This court made no finding regarding the extent of these impairments or the weight accorded to relevant medical opinions. Tr. 492. Instead, the remand asked the Social Security Administration to consider Schiewek's mental impairments under the proper legal standards. Tr. 492-93.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Schiewek challenges the ALJ's evaluation of the evidence and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform his or her past relevant work at step four, or perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

Schiewek does not contest the ALJ's findings regarding his stomach pain, hernias, or knee pain. Accordingly, this discussion is limited to the ALJ's evaluation of Schiewek's mental impairments.

In his February 2001 opinion, the ALJ assessed Schiewek's mental RFC, finding that "he cannot repeatedly interact with the general public, and remember or carry out detailed instructions." Tr. 23. The ALJ's discussion found "moderate" restriction in concentration,

persistence, and pace, and "mild" restrictions in daily activities and social functioning. Tr. 17. The ALJ did not reiterate this statement in his evaluative findings or RFC calculation. Tr. 22-23.

In his November 2004 opinion, the ALJ's mental RFC assessment stated that Schiewek has "no restrictions in activities of daily living; no restrictions in maintaining social functioning; mild restrictions in maintaining concentration, persistence, or pace; and, no episodes of decompensation." Tr. 472.

In his 2004 decision, the ALJ found that Schiewek's RFC did not preclude him from performing his past relevant work as security guard. Tr. 472-73. The ALJ solicited testimony from a vocational expert (VE) who confirmed Schiewek could return to this work. Tr. 473-74. Accordingly, the ALJ determined Schiewek was not disabled under the Act at any time through the date of his decision. *Id*.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

**DISCUSSION**

Schiewek contends the ALJ failed to accurately assess his RFC in his November 2004 decision because the ALJ failed to include all mental limitations discussed in the February 2001 decision.

Schiewek next contends that the medical evidence shows he cannot return to his past relevant work. Schiewek also suggests he should be found disabled under 20 C.F.R. Subpart P, Appendix 2, Rule 202.06.

**I.      Medical Source Statements**

Schiewek suggests the ALJ's February 2001 opinion found that Drs. Sjodin and Anderson established "moderate" limitations in Schiewek's concentration, persistence, and pace. Plaintiff's Memorandum (Pl.s Mem.) at 4. For the reasons below, this court concludes that this argument lacks merit.

**a.      Examining Physician Dr. Sjodin**

Examining physician Dr. Sjodin suggested that Schiewek had a "mild" depressive disorder based upon his reported history. Tr. 412. Doctor Sjodin noted that Schiewek exhibited "fair concentration upon examination," and observed that his pace was "slow." Tr. 412. Doctor Sjodin also suggested Schiewek's inability to persist in answering questioning was secondary to a poverty of speech. Tr. 412. Contrary to Schiewek's submission, Dr. Sjodin did not suggest a "moderate" or "marked" impairment in concentration, persistence, and pace. Pl.s Mem. at 14; Tr. 412. Doctor Sjodin's report establishes only that Schiewek's pace was "slow," not "limited." Tr. 412.

7 - OPINION AND ORDER

Schiewek next suggests that a "finding of at least moderate impairment is consistent with" Sjodin's concentration tests, problem-solving tests, and clinical observations. Pl.s Mem. at 14. Doctor Sjodin's report made no such conclusion. Instead, it asserted that "this examiner believes his depressive symptoms are not contributing to his overall situation." Tr. 413. Doctor Sjodin clarified this finding by saying that Schiewek's slow pace, reported difficulty in performing simple, repetitive tasks, and hesitancy in reciting the months of the year were ascribed to an "intellectual functioning in the lower range of normal." Tr. 413. Doctor Sjodin did not find a demonstrable impairment responsible for Schiewek's reduced functioning. Tr. 412-13.

The ALJ's February 2001 decision did not establish that Dr. Sjodin's report suggests "moderate" restrictions in concentration, persistence and pace, nor did this court affirm any similar kind of interpretation of Dr. Sjodin's report. Tr. 19-20, 486-87.

**b.     Reviewing Psychologist Dr. Anderson**

Schiewek next argues that Dr. Anderson's assessment that Schiewek "often" experienced deficiencies in concentration, persistence, and pace definitively establishes a "moderate" impairment in this area. Pl.s Mem. at 14.

Doctor Anderson completed two DDS formulaic assessments of the medical evidence. Tr. 421-31. In the first, she found no significant limits regarding "sustained concentration and persistence," with the exception of moderate limitations in following detailed instructions. Tr. 421. Doctor Anderson found moderate limitations in "the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 422. Finally,

8 - OPINION AND ORDER

Dr. Anderson found moderate limitations in appropriate public interaction, but no other social limitations. Tr. 422. In concluding her evaluation, Dr. Anderson asserted explicitly that "Claimant is capable of understanding, remembering and following through on simple tasks and routine [work environment]. Pace is slow but adequate for simple tasks." Tr. 423.

In her second DDS assessment, Dr. Anderson endorsed a slight restriction in activities of daily living and social functioning. Tr. 431. She found Schiewek "often" limited in concentration, persistence, and pace. Tr. 431. Doctor Anderson declined to endorse affirmation that these limitations established the "B" criteria for disability under 20 C.F.R. Subpart P, Appendix 1, § 12.04. Tr. 431. Doctor Anderson's subsequent review of her own findings recommended Schiewek could return to his past relevant work. Tr. 121.

In his February 2001 decision ALJ discussed the "moderate" notation in his assessment of Schiewek under the "Listing" criteria, but did not include such notation in his summarized findings or RFC assessment. Tr. 17, 22-23.

In the May 2002 Remand Order, this court noted Dr. Anderson's assessment and made no finding regarding the impact of her assessment upon Schiewek's ability to perform his past relevant work. Tr. 487, 492-93.

**c.   Analysis**

In his February 2001 decision, the ALJ noted Dr. Anderson's findings, but based his RFC calculation upon Dr. Sjodin's report. Tr. 17, 20, 23. The February 2001 RFC calculation included no "interaction with the general public," and no "ability to carry out detailed instructions." Tr. 23. In his November 2004 decision, the ALJ again reached his RFC

9 - OPINION AND ORDER

calculation based upon Dr. Sjodin's report, finding "no restrictions in maintaining social functioning, mild restrictions in maintaining concentration, persistence, or pace." Tr. 472.

Evaluation of the evidence and resolution of evidentiary conflicts is reserved for the ALJ. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Generally, a treating physician is given greater weight than an examining physician and an examining physician is given greater weight than a reviewing physician. *Edlund*, 253 F.3d 1152, 1157(9th Cir. 2001).

Here, the ALJ did not dismiss Dr. Anderson's opinion; instead he incorporated it into the discussion in both his decisions. Tr. 17, 20, 468. In both evaluations, the ALJ appropriately gave greater weight to Dr. Sjodin than to Dr. Anderson. Tr. 19-20, 468. The ALJ should have articulated the weight given each source, but because his decision conforms with the principle according greater weight to an examining physician over a reviewing physician, any error is harmless. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A reviewing physician's opinion alone cannot constitute substantial evidence justifying rejection of either an examining or treating physician. *Lester*, 81 F.3d at 831. Schiewek suggests that Dr. Anderson's opinion should overrule both Dr. Sjodin and Schiewek's treating physician, who found no evidence of depression. This suggestion lacks merit.

Citing Seventh Circuit law, Schiewek suggests the "law of the case" establishes that an earlier finding of "moderate" impairment must be incorporated into subsequent decisions. Pl.s Mem. at 12-13. Evaluation of the evidence is appropriately reserved for the ALJ. *Benton*, 331 F.3d at 1040. Shiewek does not establish that the February 2001 RFC found "moderate" restrictions in concentration, persistence, and pace.

In the Ninth Circuit, the "law of the case" doctrine recognizes that "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)). Because the ALJ made no specific, supported finding of such "moderate" restriction in earlier Schiewek's RFC calculation, this argument also fails. Tr. 17, 22-23.

## II.  The ALJ's Step Four Finding

Schiewek suggests that the ALJ erred in concluding that Schiewek could return to his past relevant work as a security guard. Schiewek contends that he is precluded from returning to his work as an equipment watchman due to 1) Dr. Sjodin's alleged finding of limitation in mental capacity, 2) Schiewek's visual impairment, and 3) conflict between Schiewek's mathematical abilities and the security guard job description established in the *Dictionary of Occupational Titles* (DOT) (U.S. Department of Labor, 4th Ed. 1991).

This court notes that the VE testified that Schiewek could return to his work as an equipment watchman (DOT code 372.667-038), not as a security guard (DOT code 372.667-034), as Schiewek asserts. Tr. 569; Pl.s Mem. at 15, Exhibit A.

### a.   Mental Impairments

In accordance with the remand order of this court, the ALJ solicited testimony from a VE regarding the effect of Schiewek's mental impairments upon his ability to return to his past relevant work. Tr. 568-74. In formatting his hypothetical questions to the VE, the ALJ included limitations supported by the medical evidence discussed above. The ALJ's question to the VE stated, "I want you to assume that based upon mental status examination that there would be

11 - OPINION AND ORDER

mild difficulties in concentration, persistence, and pace, which would be described as mild limitations in this area, but this individual can generally function well." Tr. 573.

The VE stated that a hypothetical individual with Schiewek's medically supported RFC could return to his past relevant work as an equipment watchman, as he performed it. Tr. 573-74. The VE additionally testified that deficiencies in concentration, persistence and pace would affect Schiewek's ability to perform his past relevant work, but would not preclude performing that work. Tr. 581.

In making his findings based upon VE testimony, the ALJ did not include additional limitations suggested by Schiewek's counsel at hearing, such as falling asleep in the course of duty. Tr. 583. The ALJ is not required to include unsupported limitations in his hypothetical questions to a VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001).

**b.     Visual Impairments**

Schiewek suggests that his left-eye blindness precludes all work in a "security position." Pl.s Mem. at 16. The ALJ included Schiewek's left eye impairment in his questions to the vocational expert. Tr. 571. In response to questioning by Schiewek's counsel, the VE specifically stated that security guard certification does not require visual acuity from both eyes. Tr. 581. Because Schiewek's established medical history shows no visual impairment in his right eye, the VE's testimony accurately reflects the record and the ALJ was free to disregard this restriction. Tr. 408, *see also Osenbrock*, 240 F.3d at 1163-64.

**c.     Computational Impairments**

Schiewek then argues that because Dr. Sjodin noted he has limited computational skills, he should be precluded from performing security guard work. Pl.s Mem. at 15-16. Schiewek

suggests security guard works requires "level 3" mathematical skills, and cites the DOT formulations for a security guard. Pl.s Mem. at Exhibit A. This is misleading, perhaps unintentionally: the VE and the ALJ described Schiewek's past relevant work as serving as an equipment watchman, not a security guard. Tr. 569, 472. Moreover, Schiewek misreads the DOT synopsis. Both security guard and equipment watchman positions require level one mathematical skills. DOT 372.667-034, 372.667-038. Schiewek's argument regarding DOT standards for mathematical skills is misleading and unpersuasive.

In making a step four finding, it is appropriate to consider the claimant's work as he performed it, rather than relying upon generic job descriptions or the DOT. SSR 82-61 *1-2 (available at 1982 WL 31387), SSR 82-62 *3 (available at 1982 WL 31386). The nature of a claimant's past relevant work may be established via claimant's testimony or the DOT. SSR 82-62 *3. Here, the VE and the ALJ appropriately relied upon Schiewek's testimony regarding his past relevant work. *Id.*, Tr. 578-79.

Schiewek's contention that his mental, visual, and mathematical impairments should preclude performing his past relevant work also fails. The ALJ appropriately based his step four determination upon VE testimony. Tr. 471. That testimony was adequately supported by the medical evidence and based upon proper standards. *See Osenbrock*, 240 F.3d at 1163-64.

## IV. The Grids

Schiewek also argues that he should be found disabled under 20 C.F.R. Subpart P, Appendix 2, Rule 202.06 (the Grids). Strict application of these formulae generally applies to exertional impairments only. The grids may be used for non-exertional impairments "only when the grids completely and accurately describe the claimant's abilities and limitations." *Tackett*,

180 F.3d at 1102 (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)), 20 C.F.R., Subpt. P, App.2 § 200.00(e).

Schiewek's RFC includes non-exertional limitations, established in detail above. Tr. 472. Such non-exertional limitations significantly limit performance of a "range of work" and do not fall within the grids. *Tackett*, 180 F.3d 1102. Any discussion of transferable skills under the grids is irrelevant. If the grids do not accurately describe the claimant's limitations, evaluation of non-exertional impairments at steps four and five requires the assistance of VE testimony. *Tackett*, 180 F.3d 1104. The Commissioner must then make independent step four and five findings based upon vocational testimony. The ALJ's analysis in this regard was proper and supported by substantive evidence.

## CONCLUSION

The Commissioner's decision that Schiewek did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this __1__ day of August, 2006.

    ___/s/Ancer L.Haggerty____
    ANCER L. HAGGERTY
    United States District Judge

14 - OPINION AND ORDER